```
                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF FLORIDA

                              CASE NO. 10-20402-CIV-JORDAN
                              MAGISTRATE JUDGE P. A. WHITE
DEWEY A. DAVIS,            :

     Plaintiff,            :

v.                         :
                                       REPORT OF
JORGE PASTRANA, et al.,    :        MAGISTRATE JUDGE

     Defendants.           :
_____
```

## I   INTRODUCTION

In this pro se civil rights action, plaintiff Dewey Davis filed a complaint [DE#1] pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).[1] After initial screening of the complaint, the case remains pending on claims against four defendants at FCI-Miami: Lieutenant Ismail Rodriguez; Lieutenant Jay Drenna; Lieutenant Millard Grant; and Disciplinary Hearing Officer Douglas Wombacher. The defendants allegedly violated plaintiffs' Eighth Amendment rights by denying him proper medical care. (see Report DE#6; Corrected Report DE#19; Order DE#18; and Order DE#25).

This Cause is before the Court upon defendants' joint motion to dismiss, with supporting Documents/Exhibits, which is being treated as a motion for summary judgment.[2] (DE# 33, 34). On July

---

[1]   Under certain circumstances, federal officials, or those acting under color of federal law, may be sued for the deprivation of federal constitutional rights.  In Bivens, the Supreme Court established that victims of a constitutional violation by a federal official may recover damages against that official in federal court despite the absence of any statute conferring such right.  Such action is brought pursuant to 28 U.S.C. §1331 and the applicable provisions of the United States Constitution. "The effect of Bivens was, in essence, to create a remedy against federal officers, acting under color of federal law, that was analogous to the section 1983 action against state officials." Dean v. Gladney, 621 F.2d 1331, 1336 (5 Cir. 1980), cert. denied sub nom. Dean v. County of Brazoria, 450 U.S. 983 (1981). Thus, courts generally apply §1983 law to Bivens cases.  Abella v. Rubino, 63 F.3d 1063, 1065 (11 Cir. 1995).

[2]   Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the
> (continued...)

29, 2010, Davis filed an unsworn Response to which he attached several of the defendant's exhibits as well as his own Affidavit. (DE# 37, 38).

## II DISCUSSION

---

(...continued)
>    affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56©.

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted). Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11 Cir. 1990).If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11 Cir.), cert. denied, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11 Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11 Cir. 1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11 Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11 Cir. 1990) (citing Anderson v. Liberty Lobby, Inc., supra).

Upon the filing of defendants' motion to dismiss (DE# 33), an Order of Instruction (DE# 34) was entered pursuant to Brown v. Shinbaum, 828 F.2d 707 (11 Cir. 1987), to inform plaintiff Davis that the defendants' motion with exhibits would be treated as a motion for summary judgment, and for the purpose of informing Davis of his right, as a pro se litigant, to respond to the defendants' summary judgment motion. The Order also instructed plaintiff about requirements under Fed.R.Civ.P. 56 for a proper response to such a motion.

In their motion, the defendants argue, on various grounds, that the complaint should be summarily dismissed in their favor, as to all claims and defendants.

Insofar as the case law relating to plaintiff Davis's claim of denial of medical care is concerned, the fact that this action was brought pursuant to <u>Bivens</u> rather than § 1983 is a distinction without a difference. Case law relevant to claims brought under § 1983 is likewise applicable to claims brought pursuant to <u>Bivens</u>, where <u>Bivens</u> is the judicially-created counterpart to § 1983, designed to fill a gap in the law by providing a remedy against federal officers who violate the Constitutional rights of others while acting under color of federal law, analogous to the remedy created by § 1983 against the state officers who commit such wrongs under color of state law. <u>Dean v. Gladney</u>, <u>supra</u>, 621 F.2d at 1336. <u>Abella</u>, <u>supra</u>, 63 F.3d at 1065.

## **MEDICAL CLAIMS**

As discussed in the Preliminary Report the plaintiff claims that the defendants refused to provide medical care for his left hand which he alleges he broke in a fight with another inmate. (DE#6).

In his affidavit, Davis indicates that on September 17, 2007 Lt. Rodriguez placed him in the Special Housing Unit ("SHU") for administrative detention pending an investigation for fighting. He alleges that Lt. Rodriguez refused him medical care. He claims that on September 19, 2007, he requested information concerning an administrative remedy so that he could complain about his treatment in the SHU. Specifically he claims, he was denied medical care on September 23, 2007, buy Lt. Drennan and on September 25, 2007, by Lt. Grant.  He further claims that, on October 23, 2007, during a disciplinary hearing he informed DHO Wombacher that his left hand was in serious pain and that he was unable to get medical assistance for his injury during his confinement in the SHU. Diaz also noted that his left hand was not evaluated and x-rayed until

3

after his arrival at Fort Dix Federal Correctional Institution where on June 26, 2008 an orthopedic surgeon informed him that he needed surgery.

In opposition to Davis's affidavit, the defendant's have filed a number of exhibits.  These exhibits demonstrate that Davis was seen by medical staff on September 17, 2007 shortly after the alleged injury occurred.  He reported that "nothing happened," but was assessed for an injury to his left hand.  According to the initial report an x-ray was ordered to rule out a fracture.  The notations of the physician assistant indicate that Davis was in no acute distress.  The notes also indicate that Davis had some type of prior injury to his hand, apparently in 2005. (DE#33-1, 33-8). Davis was seen again on September 17 at 6:50 p.m.  He reported that "I was just told to come and see you."  He was advised to apply a cold compress and was prescribed medication. (DE#33-1, 33-8).

Davis was seen again by medical care providers, apparently for evaluation of high blood pressure, on September 26, October 8, October 12, October 23, October 25, October 30, December 26, January 18, January 22, and February 1.  Davis did not complain of any problem with his left hand during any of these visits.  In addition to these specific visits for evaluation of his high blood pressure, a physician's assistant made daily visits to Davis while he was in SHU.  There is no indication that he complained of any problem with his left hand during any of these daily visits.

Defendant Wombacher has filed an affidavit in which he acknowledges that he is a DHO.  He acknowledges that he conducted Davis's disciplinary hearing on October 23, 2007 and that during the hearing Davis was asked if he was injured? In response, Davis held up one of his hands and stated, "I hurt my hand."  Wombacher avers that at no time did Davis complain of lack of medical care or seek his assistance in obtaining medical care.  The undersigned notes that in the report of the disciplinary hearing Wombacher observed that Davis's left hand was swollen. As noted above Davis

was in fact seen by a medical care provider on the day of the hearing.

Davis has responded to the motion to dismiss. He claims, contrary to the evidence, that he never received any medical care from any medical staff at FCI-Miami. He acknowledges that he was seen by a medical practitioner on the dates reflected in the records submitted by the defendants. However he never explains why he did not complain about any problem with his left hand during those visits. Davis adds some detail to his claims. However, he fails to state with specificity the facts to support his claims. He merely states that his requests for medical care for his left hand were denied.

### 1. Law Relating to Medical Claims in the Prison Context

Title 42 U.S.C., Section 1983, requires an affirmative causal connection between an official's acts and an alleged constitutional deprivation. Harris v. Ostrout, 65 F.3d 912, 917 (11 Cir. 1995); Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11 Cir. 1995).

Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eight Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Whether an inmate's medical need require attention as a matter of constitutional right depends upon its severity. See Estelle, supra, at 104-06. Generally, a serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West, 320 F.3d 1235, 1243 (11 Cir. 2003) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11 Cir. 1994)).

The standard may be met where there is a showing that jail officials denied or delayed an inmate from receiving necessary medical treatment for non-medical reasons, see Ancata v. Prison Health Services, Inc., 769 F.2d 700, 704 (11 Cir. 1985). In addition, of-

5

ficials' inordinate delay in providing necessary treatment, without medical explanation, may evidence deliberate indifference, Farrow v. West, 320 F.3d 1235, 1247 (11 Cir. 2003), and the standard may be met where there is intentional, unexplained delay in providing to access treatment for serious painful injuries, Brown v. Hughes, 894 F.2d 1533 (11 Cir. 1990), and cases cited therein.

Deliberate indifference can be established by evidence that necessary medical treatment has been withheld or delayed for nonmedical or unexplained reasons. Farrow, 320 F.3d at 1247 (finding jury question on issue of deliberate indifference because of unexplained fifteen-month delay in treatment). The tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay. Harris v. Coweta County, 21 F.3d 388, 393-94 (11 Cir. 1994). A plaintiff may also establish deliberate indifference with evidence of treatment "so cursory as to amount to no treatment at all." Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11 Cir. 1985). If prison officials delayed or deny access to medical care or intentionally interfere with treatment once prescribed, they may violate the Eighth Amendment. Estelle, 429 U.S. at 104.

In Estelle, the Supreme Court reasoned that "an inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." Id., 429 U.S. at 103. Not every claim by a prisoner, asserting that he has not received adequate medical treatment, however, is sufficient to state a violation of the Eighth Amendment. McElligot v. Foley, 182 F.3d 1248, 1254 (11 Cir.1999). Negligence is not enough,[3] and a mere difference of opinion between an inmate and prison medical staff concerning his diagnosis and course of treatment does not

---

[3] It is well settled that a showing of mere negligence, neglect, or medical malpractice is insufficient to recover on a §1983 claim. A showing of conscious or callous indifference is required. Estelle, supra, 429 U.S. at 104-06; Daniels v. Williams, 474 U.S. 327 (1986); Brown v. Hughes, 894 F.2d 1533, 1537-38 (11 Cir. 1990); Washington v. Dugger, 860 F.2d 1018, 1021 (11 Cir. 1988).

rise to the level of a constitutional deprivation.[4] Thus, it is well settled that a showing of mere negligence, neglect, or medical malpractice is insufficient to recover on a §1983 claim. Estelle, supra; Adams v. Poag, 61 F.3d 1538 (11 Cir. 1995). In fact, once an inmate has received medical care, courts are hesitant to find that a constitutional violation has occurred. Hamm v. DeKalb County, 774 F.2d 1567, (11 Cir.), cert. denied, 475 U.S. 1096 (1986).

Treatment violates the Eighth Amendment only if it involves "something more than a medical judgment call, an accident, or an inadvertent failure," Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5 Cir. 1980). It must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Harris v. Thigpen, 941 F.2d 1495, 1505 (11 Cir. 1991). In order to show an objectively serious deprivation of medical care, the inmate must demonstrate: 1) an objectively serious medical need that, left unattended, poses a serious risk of harm; 2) that the response made by public officials to that need was poor enough to constitute an "unnecessary and wanton infliction of pain," and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law; and 3) an attitude of deliberate indifference, which shows that the defendants were aware of the facts from which a substantial risk of serious harm could be inferred, *and that they actually did draw that inference*. Taylor v. Adams, 221 F.3d 1254,

---

[4] Courts have long recognized that a difference of opinion between an inmate and the prison medical staff regarding medical matters, including the diagnosis or treatment which the inmate receives, cannot in itself rise to the level of a cause of action for cruel and unusual punishment, and have consistently held that the propriety of a certain course of medical treatment is not a proper subject for review in a civil rights action. Estelle, supra, at 107 ("matter[s] of medical judgment" do not give rise to a §1983 claim). See: Ledoux v. Davies, 961 F.2d 1536 (10 Cir. 1992) (inmate's claim he was denied medication was contradicted by his own statement, and inmate's belief that he needed additional medication other than that prescribed by treating physician was insufficient to establish constitutional violation); Ramos v. Lamm, 639 F.2d 559, 575 (10 Cir. 1980) (difference of opinion between inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation), cert. denied, 450 U.S. 1041 (1981); Smart v. Villar, 547 F.2d 112, 114 (10 Cir. 1976) (same); Burns v. Head Jailor of LaSalle County Jail, 576 F.Supp. 618, 620 (N.D. Ill., E.D. 1984) (exercise of prison doctor's professional judgment to discontinue prescription for certain drugs not actionable under §1983).

1258 (11 Cir. 2002). The deliberate indifference requirement is discussed further, below.

### **The Eighth Amendment**

The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Helling v. McKinney, 509 U.S. 25, 31 (1993)); Campbell v. Sikes, 169 F.3d 1353, 1362 (11 Cir. 1999); see also Whitley v. Albers, 475 U.S. 312, 327 (1986) (holding that "the Due Process Clause affords ... no greater protection").

In LaMarca v. Turner, 995 F.2d 1526, 1535 (11 Cir. 1993) the Court held that to prevail on an Eighth Amendment claim for damages in a civil rights suit, a plaintiff must prove three elements: 1) *an objective element*, a condition that inflicted unnecessary pain or suffering, Id., citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981); 2) *a subjective element*, deliberate indifference on the part of the defendant(s) to that condition, Id., citing Wilson v. Seiter, 501 U.S. 594 (1991); and 3) causation, Id., citing Williams v. Bennett, 689 F.2d 1370, 1389-90 (11 Cir. 1982). Both the objective and subjective elements must be satisfied. LaMarca, supra, 995 F.2d at 1535, n. 17 (citing Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 999-1000 (1992)).

Although the Constitution does not require comfortable prisons, it does not permit inhumane ones. Farmer, supra, 511 U.S. at 832 (quoting Rhodes, supra, 452 U.S. at 349). Still, the Eighth Amendment does not authorize judicial reconsideration of "every governmental action affecting the interests or well-being of a prisoner," Whitley, 475 U.S. at 319; instead, "'[a]fter incarceration, only the "'unnecessary and wanton infliction of pain'" . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" Id. at 319 (quoting Ingraham v. Wright, 430 U.S. 651, 670 (1977) (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976) (citations omitted))). Crucial to establishing an "unnecessary and wanton infliction of pain" is some proof that officials acted with specific intent. The exact nature of the specific intent required

8

depends on the type of claim at issue. Campbell v. Sikes, supra, 169 F.3d at 1363. This specific-intent requirement for an Eighth Amendment violation applies to claims of medical indifference. Campbell v. Sikes, supra, 169 F.3d at 1363-64.

As the Eleventh Circuit in Campbell v. Sikes observed, the Supreme Court in Wilson v. Seiter, and later Farmer v. Brennan, has "refined the inquiry" regarding satisfaction of the subjective element required for an Eighth Amendment deprivation. Campbell, supra, 169 F.3d at 1363. The Supreme Court explained in Wilson v. Seiter, that the Eighth Amendment applies only to punishments, and that prison conditions are only punishment if a mental element of punitive intent is shown, Wilson, supra, 501 U.S. at 300 ("If the pain inflicted is not formally meted out as punishment by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify"). In Farmer v. Brennan, the Court provided further explanation of the mental state that is required for deliberate indifference, Farmer, supra, 511 U.S. at 837-38 (holding that a prison official cannot be found liable under the 8th Amendment for denying an inmate humane conditions unless he knows of and disregards an excessive risk to inmate health or safety; and he must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the defendant must also draw the inference).

As the Eleventh Circuit has noted post-Farmer, proof that the defendant should have perceived the risk, but did not, is insufficient. Campbell supra, at 1364 (citing Farmer, at 838); Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11 Cir. 1996) (the official must have a subjectively "'sufficiently culpable state of mind,'" and "[t]here is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not...'") (quoting Farmer, supra, 511 U.S. at 834, 838). Liability may be imposed for deliberate indifference only if the plaintiff proves the defendant actually knew of "an excessive risk to inmate health or safety" and disregarded that risk." Campbell, supra, at 1364 (citing Farmer, at 837).

## 2. <u>Analysis RE: Medical Claims</u>

Each of Davis's claims against the several defendants alleges essentially the same issuse, that is, each defendant denied or ignored his requests for medical care concerning his injured hand.

As discussed above, in order to establish a claim for failure to provide medical care Davis must first establish that he had a serious medical need. He claims that he broke his hand and suffered great pain. Although there is no dispute that Davis suffered some injury, the seriousness of that injury remains disputed. However, the evidence shows that Davis was promptly provided medical care for the injury. On the day of the injury, September 17, 2007, Davis was seen twice by medical personnel. At the first examination he reported to the physician's assistant that "nothing happened", and at the second exam advised the physician's assistant that he was told to see him. Thus the record reflects that, contrary to his allegation that Rodriguez denied him access to medical care, Davis was provided medical care on the day of the alleged injury. Similarly, his claim against Wombacher is refuted by the undisputed facts which show that Davis did see a medical care provider on the date he alleges Wombacher denied him access to medical care.

In addition to establishing a serious medical need, Davis must also establish that prison authorities denied or delayed necessary medical care. On this issue the undisputed facts show that Davis received immediate medical evaluation of his injury. Additionally, it is undisputed that Davis had access to ongoing medical attention. He was visited in the SHU daily and had several appointments with a medical care provider to address his other medical needs. The medical records show that Davis never broached the subject of his left hand during any of these medical visits.

Bases upon the defendand's medical records, Davis cannot establish that there was any delay or denial of medical care.

As discussed above, in order to establish a violation of the Eight Amendment proscription against cruel and unusual punishment Davis must establish an objective element, namely that he had a condition that inflicted unnecessary pain or suffering. Davis cannot establish the objective element in that he cannot establish a condition that inflicted unnecessary pain or suffering.  Davis was immediately examined and told the medical care provider that "nothing happened."  The notes indicate that Davis was in no acute distress.  He never complained of any pain to a medical care provider despite the numerous opportunities to do so. Under these facts an objective assessment indicates that Davis was not suffering from unnecessary pain or suffering.

Even if Davis did establish the objective element, he cannot establish the subjective element.  As discussed above, in order to establish the subjective element, Davis must show deliberate indifference to the conditionfrom which he suffers. Under the undisputed facts, Davis was provided immediate medical attention for his claimed hand injury and had continuing access to medical care. Other than the initial examination, he never reported any concerns regarding his left hand to medical care providers. Based on the numerous opportunities for Davis to obtain medical care it cannot be said that the prison officials were deliberately indifferent to any of Davis's medical needs.

In short, the undisputed facts indicate Davis suffered some injury on September 17, 2007.  He was diagnosed and treated for the injury that same day.  Over the subsequent time while he was in the SHU he received daily access to medical care but failed to complain of any problem with his left hand.  He failed to complain about his

left hand during medical appointments regarding his other medical issues. Thus the undisputed facts show that Davis was never denied access to medical care by any of the four defendants.

In light of Davis's inability to establish that he was denied access to medical care, he cannot establish a Constitutional violation. Therefore, the court need not address the defendant's qualified immunity defense.

### III. Conclusion

It is therefore recommended that as to all claims and defendants, the defendants' joint motion to dismiss (treated as a motion for summary judgment), be GRANTED; and this case be closed.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated: December 15th, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Dewey A. Davis, pro se
 Reg. No. 64633-004
 FCI-Fort Dix
 P.O. Box 2000
 Fort Dix, NJ 08640

 Charles S. White, AUSA
 United States Attorneys' Office
 99 N.E. 4th Steet, Suite 300
 Miami, FL 33131